Filed 5/19/23  Community Action Employee Assistance Program v. Bruner CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| COMMUNITY ACTION EMPLOYEE ASSISTANCE PROGRAM, INC., et al., | B319234 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV13664) |
| v. | |
| KATHLEEN A. BRUNER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

The Griffith Firm, Edward Griffith; Law Office of Steven E. Creamer and Steven E. Creamer for Plaintiffs and Appellants.

Robison, Sharp, Sullivan & Brust, Frank C. Gilmore and Hannah E. Winston for Defendants and Respondents.

_____

We are presented with an appeal by a litigant who has filed several related lawsuits described by one state and one federal judge as "absurd." The trial court in the current appeal found the litigation a "sham" that had "devolved into a slow-motion train wreck" by the time it had resolved. We do not take a position on the correctness of these descriptors, holding only that the appeal is without merit. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

By way of introduction, plaintiff and appellant Community Action Employee Assistance Program, Inc. (CAEAP), a nonprofit organization, brought suit against its founders and former managers, Kathleen and Robert Bruner (Founders) for breach of fiduciary duty; and against attorney Robert Burke (Founders' Attorney) for aiding and abetting Founders' breach. Founders and Founders' Attorney separately obtained summary judgment based on CAEAP not having suffered damages arising from the alleged breach.[1]

### 1. *Underlying Facts*

Founders established CAEAP in 1990, and managed it until 2016. As a non-profit, CAEAP provided employee assistance programs to employers around the nation and Canada. CAEAP generated its revenue through flat-rate contracts with companies and municipalities. Through these contracts, CAEAP

---

[1] As we shall discuss, there have been multiple lawsuits between the parties. The first action resulted in a summary judgment in favor of Founders. (*LUX EAP, LLC v. Bruner* (C.D.Cal. 2018) 2018 WL 6016973, aff'd. (9th Cir. 2020) 811 Fed.Appx. 405 (*Fed 1*).) While CAEAP disagrees with the ruling in that case, we take our discussion of undisputed background facts from the district court's opinion in *Fed 1*. (*Id.* at pp. *3-*5.)

provided various human resource-like services to the employees of the contracting parties. CAEAP provided quarterly "utilization reports" that described how many of each client's employees used CAEAP's services.

In 2016, management of CAEAP was transferred to a new entity, Lux EAP, LLC (New Manager). According to the allegations of the complaint, this was essentially a "sale" of CAEAP, but non-profits cannot be owned or sold in California, so the transaction was arranged as a transfer of control. The arrangement was effectuated by two agreements – a management agreement transferring control of CAEAP to New Manager, and a consulting agreement with Founders, pursuant to which they would assist with the transition. New Manager placed Colin Conner and John Gorzynski in control of CAEAP, in place of Founders. As part of the deal, New Manager would pay Founders $3.1 million over five years.

New Manager was unable to operate CAEAP successfully. New Manager blamed Founders for this. New Manager alleged that, when Founders operated CAEAP, they issued inflated utilization reports to its clients, which fraudulently induced the clients to renew their contracts with CAEAP. When the true numbers were discovered, New Manager concluded the business was not viable.[2]

---

[2] Founders take a different view. In one of their pleadings against New Manager in federal court, Founders asserted that the flat rates CAEAP charged its clients had no relationship to the utilization reports. Founders alleged that New Manager had never intended to manage and grow CAEAP; its purpose had been to simply raid CAEAP's assets and leave it as an empty shell. The district court did not resolve this dispute, nor do we.

## 2.     *Federal Lawsuit No. 1*

In July 2017, New Manager filed suit in United States District Court against CAEAP and Founders, alleging, among other things:  (1) New Manager was fraudulently induced to enter into the agreement by CAEAP's misrepresentation of its revenue and the fraudulent utilization reports; and (2) Founders had breached their fiduciary duties to CAEAP, by issuance of inflated utilization reports to its clients.  Because Founders claimed they had not been paid under the consulting agreement, Founders counterclaimed for breach of the consulting agreement.  They also sued for defamation.  (*Fed 1*, *supra,* 2018 WL 6016973 at pp. *6, *10, *11.)

On July 31, 2018, District Court Judge Dolly Gee granted partial summary judgment in favor of Founders – specifically defeating the entirety of New Manager's complaint against them, and leaving Founders' counterclaims for resolution.  (*Fed 1, supra,* 2018 WL 6016973 at p. *13.)  As relevant to the current action, the court concluded New Manager's claim for fraudulent inducement failed because the utilization reports had no bearing on CAEAP's revenue.  The court found there was no triable issue because – based on a failure to timely serve responses to requests for admissions – the court deemed New Manager to have admitted that fact.  (*Id.* at p. *11.)

As to New Manager's claim that Founders had breached their fiduciary duties to CAEAP by issuing fraudulent utilization reports to CAEAP's clients, the district court concluded that New Manager was the wrong entity to pursue this claim.  If any party was injured by the alleged breach, it was CAEAP (and/or its clients), not New Manager.  The court granted summary judgment.  (*Fed 1*, *supra,* 2018 WL 6016973 at pp. *11-*12.)

4

The Ninth Circuit affirmed, with a dissent. (*LUX EAP, LLC v. Bruner, supra,* 811 Fed.Appx. at pp. 405, 407.)

At some point following the grant of summary judgment on New Manager's federal claims, Founders prevailed on their counterclaim for breach of the consulting agreement and obtained a judgment against New Manager for $3.1 million.

**3.  *The Current Suit***

Because the District Court in *Fed 1* had concluded New Manager was the wrong entity to pursue a breach of fiduciary duty claim against Founders, CAEAP, now managed by New Manager, brought the present action against Founders. CAEAP also sued Founders' Attorney for aiding and abetting the breach of fiduciary duty. The operative complaint is the second amended complaint.[3]

As we shall discuss, the record provided by CAEAP on the current appeal is missing some key documents. Our discussion of the procedural background from this point onward is hampered by their absence.

**4.  *Demurrer***

The operative second amended complaint followed the trial court's ruling on a demurrer. The record on appeal does not contain the demurrer, the complaint to which it was directed, the

---

[3]    The complaint was filed on behalf of CAEAP and two individuals, Conner and Gorzynski. The record does not clearly disclose the disposition of individuals' complaint. The notice of appeal was filed on behalf of CAEAP "et als.," and CAEAP's opening brief identifies the individual plaintiffs as additional appellants. Appellants' briefs do not contain any arguments specific to the individual plaintiffs. To the extent Conner and Gorzynski are appellants here, references to CAEAP include them.

5

briefs on the demurrer, or the trial court's order. We only know the ruling on the demurrer through later descriptions of it.

This much is clear: CAEAP's original complaint had attempted to reallege a cause of action for fraudulent inducement, similar to the claim New Manager had lost in the *Fed 1* suit. Founders successfully demurred on the basis of res judicata. In its brief on appeal, CAEAP expressly states that it is not challenging this ruling. We therefore consider it binding on CAEAP.

**5.     *Founders' Motion for Summary Judgment***

A.     *The Motion*

By the time Founders moved for summary judgment, the only cause of action remaining was for breach of their fiduciary duty to CAEAP.[4] CAEAP alleged its damages for this breach consisted of "liability to its clients and its clients' employees for fraud based on the inflated utilization report(s) . . . ." Founders sought summary judgment because CAEAP suffered no damages. Specifically, Founders submitted declarations stating they were unaware of any claims asserted by any CAEAP clients (or clients' employees) for liability against CAEAP. They took the position that, since CAEAP had conducted no discovery in the case, it possessed no evidence of any so-called client claims.

B.     *The Opposition*

CAEAP opposed the motion on two grounds. First, in an implicit concession that it had no evidence that CAEAP's clients had ever complained about the allegedly inflated utilization reports, CAEAP sought an extension to conduct discovery of its clients. Second, CAEAP took the position that the *Fed 1*

---

[4]     As we later discuss, Founders' Attorney's motion for summary judgment was heard separately.

judgment, by which Founders were awarded $3.1 million for New Manager's breach of the consulting agreement, actually constituted damages sustained by CAEAP itself, arising from Founders' breach of their fiduciary duty when they had managed CAEAP. CAEAP relied on a clause in the management agreement, by which CAEAP had agreed to indemnify New Manager for certain losses. As for how the alleged breach of fiduciary duty purportedly caused these particular damages, CAEAP explained: "[Founders' use] of fraudulent utilization reports breached their fiduciary duty to operate CAEAP in an honest, nonfraudulent manner. When [New Manager] discovered that CAEAP's business was not viable without continuing to defraud [its] clients, it had no choice but to stop operating, which prevented [New Manager] from paying [Founders'] consulting fees. Thus, the [Founders'] breach of their fiduciary duty is the proximate cause of the [Founders'] judgment against [New Manager] and [New Manager's] indemnification claim against CAEAP."

C.    *Founders' Reply*

Founders challenged this damages-by-indemnification argument on multiple grounds, including res judicata. Based on the trial court's previous ruling on demurrer, Founders argued that CAEAP was impermissibly attempting to re-litigate New Manager's fraud in the inducement claim as their theory of damages for CAEAP's breach of fiduciary duty cause of action.

D.    *Orders Granting Summary Judgment*

Originally set for September 11, 2020, the summary judgment motion was continued to February 22, 2021, and again to March 15, 2021, to allow CAEAP to conduct additional discovery.

7

There followed additional briefing, which is not part of the record on appeal.[5]  The order the court issued on March 15, 2021, fills in some of the blanks.  It appears that, during the time CAEAP was supposed to be conducting discovery in the state litigation, it conducted none.  Instead, CAEAP put all its eggs in the damages-by-indemnification basket.  Specifically, New Manager brought another suit against CAEAP, this time in federal court in the District of Nevada.  The complaint sought indemnity for the $3.1 million *Fed 1* judgment in favor of Founders.  Back in the state court, CAEAP moved to stay the summary judgment motion until the new federal indemnity action was resolved.

The trial court in the present action was not impressed.  Recognizing that the same individuals who controlled New Manager also controlled CAEAP, the court stated, "But the Nevada case wasn't brought by one of CAEAP's customers; it is not one of the potential claims featured in the [complaint].  The Nevada case is an action for *indemnity*.  [New Manager] (an entity controlled by Plaintiffs Conner and Gorzynski), the plaintiff and cross-defendant in the prior federal action, is now asking CAEAP (also controlled by Plaintiffs Conner and Gorzynski) to indemnify [it] for the judgment obtained by [Founders] in that prior action.  Put more plainly, it appears that Plaintiffs are suing *themselves* for indemnity in the hopes that

[5]     On the day of the hearing, CAEAP filed an ex parte motion to continue the already-twice-continued summary judgment motion.  This was supported by a declaration.  An opposition was filed, with a supporting declaration.  A reply and reply declaration followed.  None of these documents are part of our record on appeal; nor is the reporter's transcript of the hearing.  The trial court denied the ex parte motion.

this will transmute the federal judgment *favoring* [Founders] into a state court damages award *against* [Founders].  [¶]  These machinations have plunged this case into absurdity."

The trial court denied the request to stay or continue the summary judgment motion.  It then granted Founders summary judgment, concluding no triable issue existed as to damages.  The court explained, "Plaintiffs have effectively conceded that, as of this moment, they have no damages.  As explained above, Plaintiff's lack of discovery in a two-year-old case is nobody's fault but their own.  And the Nevada case does not presently represent damages in this case.  [¶]  This appears to be sham litigation.  CAEAP and [New Manager] are controlled by the same people and have been represented by the same counsel [ ].  Further, the Nevada case is an attempt to undermine the ruling issued by [District] Judge Gee.  She resolved the fraud and contract claims in favor of [Founders].  A chain of indemnity claims between now-sister entities cannot be used to re-litigate those claims and cancel out the judgment already issued and affirmed."

### 6.    *Fed 2 Suit and Indemnification Agreement*

New Manager eventually dismissed the Nevada indemnification suit against CAEAP and refiled it in the Central District of California, where it was assigned to Judge Gee (*LUX EAP, LLC v. Community Action Employment Assistance Program* (C.D.Cal. 2021) 2021 WL 5024390 (*Fed 2*).)  Founders were not named parties.  CAEAP filed an answer, agreeing that it owed New Manager a duty to indemnify it for the *Fed 1* judgment and consenting to the entry of judgment against itself.

Founders eventually intervened in *Fed 2*, and successfully moved to dismiss the suit on the ground that there was no case or

9

controversy – CAEAP had agreed that it did, in fact, have a duty to indemnify New Manager. Judge Gee did not mince words in her dismissal order: "This action is indeed absurd. There is no actual controversy between [New Manager] and CAEAP. The parties are clearly acting in concert at the direction of the same people, as CAEAP's Answer *and* [*Attorney*] *Griffith's concurrent representation of both sides reveals.*"**6** (*Fed 2, supra,* 2021 WL 5024390 at p. *2, italics added.) She added, "This is not a proper use of the judicial system. [New Manager] openly admits to this plan. [Citation.] . . . But CAEAP does not need a *judgment* against it because it already agrees to indemnify [New Manager]—it can simply produce an agreement of indemnification in the state court action and let [Founders] challenge the import of it in that forum." (*Ibid.*)

Perceiving this language as an "instruction," from the District Court, CAEAP signed a contract specifically agreeing to indemnify New Manager for the $3.1 million *Fed 1* judgment in favor of Founders.

7.   ***Founders' Attorney's Motion for Summary Judgment in the State Court Action***

A.   *The Motion*

Back in state court, Founders' Attorney, who was also a named defendant, moved for summary judgment on the grounds that: (1) he cannot be liable for aiding and abetting Founders' breach of fiduciary duty when the court had already determined that Founders did not breach any fiduciary duty; and (2) as established in connection with Founders' motion for summary judgment, CAEAP had suffered no damages.

---

**6**     Attorney Griffith is representing CAEAP in this appeal.

10

B.     *The Opposition*

CAEAP opposed the motion, arguing that the indemnity agreement it had recently signed with New Manager was the only evidence of damages it needed.  CAEAP argued that the indemnity agreement evidenced damages and was not, in fact, an impermissible collateral attack on the *Fed 1* judgment.  This argument was unsupported by any citation to authority.[7]  CAEAP simply argued that this case was "unusual" because New Manager lost its fraudulent inducement cause of action in *Fed 1* not "on the merits," but due to counsel's service error in connection with New Manager's response to requests for admissions.  It sought its day in court to prove Founders had committed fraud.

C.     *The Reply*

In its reply, Founders' Attorney argued that CAEAP's only theory of damages was an impermissible collateral attack on Founders' judgment against New Manager in *Fed 1*.

D.     *Trial Court's Order*

Following the hearing, the trial court granted summary judgment.[8]  The trial court rejected CAEAP's attempt to create damages by means of the indemnity agreement, calling it "absurd

---

[7]     CAEAP purported to incorporate an opposition brief on this issue it had filed in the *Fed 2* action.  It claimed the document was "annexed as Exhibit xx and is hereby adopted as part of CAEAP's opposition . . . ."  The document is not part of the record on appeal.

[8]     As with Founders' motion for summary judgment, the record contains no reporter's transcript of the hearing on Founders' Attorney's motion.

on its face." The court explained, "Even if Defendants had committed breaches of their fiduciary duties as [CAEAP] allege[s], an agreement voluntarily signed years later after a change in ownership cannot constitute damages arising out of that breach. That is especially true when the agreement is obviously not an arm's length transaction . . . ."

**8.    *Judgment and Notice of Appeal***

Final judgment was entered in favor of Founders and Founders' Attorney on January 6, 2022. CAEAP filed a timely notice of appeal.

### *DISCUSSION*

From this lengthy and somewhat tortured procedural history, a simple result follows: the judgment must be affirmed.

**1.    *CAEAP Has Provided an Inadequate Record on Appeal***

The appellant has the burden of providing an adequate record on appeal. Failure to provide a record sufficient for meaningful appellate review requires resolution of the issue against appellant. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

In setting forth the procedural history, we have identified numerous documents missing from the record on appeal. We are at a distinct disadvantage in reviewing the two summary judgment rulings without the complete briefing which led to those orders. Nor do we have the reporter's transcripts. The lack of the order on demurrer is also critical, as the trial court's res judicata ruling informed its decisions on summary judgment. Taken together, the record is inadequate, and the judgment can be affirmed on that basis alone.

12

## 2. *Summary Judgment Was Properly Granted*

We nevertheless turn to the merits of the two summary judgment rulings. We review summary judgment de novo "applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.) Here, CAEAP's attempt to establish a triable issue of fact on breach of fiduciary duty damages fails on two bases – one factual and one legal.

### A. *CAEAP's Argument Fails on the Facts*

CAEAP takes the position that the *Fed 1* judgment against New Manager, which CAEAP agreed to pay, constitutes damages for Founders' breach of their fiduciary duty. The trial court plainly stated that the indemnification agreement itself was a sham. We reject CAEAP's argument on a somewhat different basis: these damages do not arise from the alleged breach of Founders' fiduciary duty to CAEAP.

CAEAP's theory, as explained in its opposition to Founders' summary judgment motion, and repeated again in its briefs on appeal, is as follows: Founders breached their fiduciary duty to CAEAP by inflating utilization reports. New Manager discovered CAEAP's business was not viable unless New Manager similarly inflated the reports, which it would not do. It therefore stopped operating. Without funds, New Manager argues it had no alternative but to breach the consulting agreement with Founders, leading to the *Fed 1* judgment. In the admitted absence of any evidence of conduct adverse to CAEAP's clients, there is no link between the alleged false utilization reports and New Manager's decision to shut down CAEAP. CAEAP

13

presented no evidence that, for example, any clients left CAEAP when it was under new management because they had learned of the inflated utilization reports. Without any evidence about CAEAP's clients, the trial court was correct that no triable issue of fact existed that it was Founders' inflated reports that put CAEAP out of business. Rather, it was New Manager's apparent anticipation of lower revenues. Under this theory, the trial court was correct that any CAEAP business losses were not caused by the Founders' purported issuance of fraudulent utilization reports, but by New Manager's operation of the business.

B.    *CAEAP's Argument Fails on the Law*

If anyone suffered from Founders' alleged use of inflated utilization reports, it was not CAEAP, but New Manager, who claims to have been deceived by the reports when it took over the management of CAEAP in the first place. But any effort to transform New Manager's fraudulent inducement damages into CAEAP's breach of fiduciary duty damages runs afoul of the *Fed 1* judgment itself.

Lurking behind CAEAP's novel theory of damages is that the *Fed 1* judgment is not entitled to full res judicata effect because it arose, in part, from New Manager's failure to timely respond to discovery. Indeed, CAEAP concedes that *Fed 1* "would appear to preclude an action challenging [Founders] for conduct that ordinarily would have been resolved as part of the action leading to the federal judgment." But CAEAP argues that since there was no trial on the merits of Founders' allegedly fraudulent conduct, there is no bar to raising the claim a second time in this case. CAEAP cites no authority for this proposition. When a discussion on appeal is conclusory and fails to cite any authority, it amounts to an abandonment of the issue. (*People ex rel. 20th*

14

*Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284.) In any event, a dismissal as a sanction for failure to comply with discovery rules may constitute a dismissal on the merits for res judicata purposes. (See *Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 378.)

## ***DISPOSITION***

The judgment is affirmed. CAEAP is to pay Founders' and Founders' Attorney's costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM, J.

15